1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,          Case No. 6:18-mj-00008-MJS-1

12            Plaintiff,

13       v.                             ORDER DENYING DEFENDANT'S
                                        MOTION TO SUPPRESS
14   ARMANDO ONTIVEROS,

15            Defendant.                ECF No. 9

16

17          Defendant Armando Ontiveros is charged with four misdemeanor counts stemming from

18   an encounter with a law-enforcement park ranger on Southside Drive in Yosemite National Park.

19   He moves to suppress "all evidence obtained in violation of Mr. Ontiveros's Fourth Amendment

20   right to be free from unreasonable seizures."  ECF No. 9.  The parties have fully briefed the

21   issues, and the court has heard argument on the motion.  The court will deny defendant's motion

22   to suppress.

23       I.    FACTUAL BACKGROUND

24          On December 24th, 2017, at approximately 6:00 p.m., Ranger Nash of Yosemite National

25   Park saw a White Mercury van parked in the Sentinel Beach Picnic Area.  He observed two

26   empty twelve-ounce cans of Bud Light on the ground near the van.  Ranger Nash contacted the

27   sole individual in the Sentinel Beach Picnic Area, whom he later identified as defendant

28

Ontiveros.  Ranger Nash told defendant that camping was not allowed at that location and that defendant would need to pick up his trash before leaving.  Ranger Nash also informed defendant that he had to be sober if he was to drive.  Defendant said he understood.

One hour later, at about 7:00 p.m., Ranger Nash observed the white Mercury van leave the Sentinel Beach Picnic Area in an unusual manner.  The van first made a wide left turn onto Southside Drive.  It briefly crossed the dashed center line into the right lane before entering the left lane and abruptly veering off the road and back into the parking lot.  Upon returning to the parking lot, the van turned around and re-exited the Sentinel Beach Picnic Area via Southside Drive.  The van drove a quarter-mile down Southside Drive before stopping at the Swinging Bridge parking area.  Defendant Ontiveros then left the white van and walked to the bridge.  At this point, Ranger Nash returned to the Sentinel Beach Picnic Area, where he noticed an empty Bud Light beer can on the ground where the van had been parked.

At about 7:40 p.m., Ranger Nash returned to the Swinging Bridge area, where he observed defendant Ontiveros sitting in the driver's seat of the white van with the keys in the ignition.  The van was parked in a marked space next to and parallel with Southside Drive, a one-way street in which traffic flows eastward.  With a spotlight on but no flashing lights or siren, Ranger Nash pulled in behind defendant and parked, leaving about one and a half car lengths between the Ranger Nash's vehicle and defendant's van.  When defendant saw Ranger Nash park behind him, he got out of his van and walked toward Ranger Nash.  Ranger Nash saw that defendant had difficulty walking and swayed while standing, and his eyes were glassy, watery, and bloodshot.

Defendant told Ranger Nash that he had consumed three Bud Light beers at the Sentinel Beach Picnic Area.  Defendant said that he was feeling the effects of the beer, so he was waiting for the effects to subside before a planned departure for Pacifica, California.  Defendant also told Ranger Nash that he had marijuana in the van, which he had last smoked on December 23, 2018.  Defendant consented to Standardized Field Sobriety Tests, during which he exhibited signs of impairment.  Ranger Nash administered a preliminary alcohol screening, which indicated that defendant's blood alcohol content ("BAC") was 0.159%.

Ranger Nash then placed defendant under arrest and transported him to the Yosemite Holding Facility. Upon arrival, defendant took an evidentiary breath test that showed his BAC to be 0.14% at 9:05 p.m. and 0.13% at 9:08 p.m. Rangers Nash and McGahey searched defendant's vehicle and found 22.4 grams of marijuana in a black backpack on the front passenger seat. Defendant now faces four counts:

- **Count I:** 36 CFR § 4.23(a)(1): Operating a motor vehicle under the influence of a drug or drugs to a degree that renders the operator incapable of safe operation.

- **Count II:** 36 CFR § 4.23(a)(2): Operating a motor vehicle under the influence of alcohol or drugs when the alcohol concentration in the operator's breath is 0.08 or more grams of alcohol per 210 liters of breath.

- **Count III:** 36 CFR § 2.14(a)(1): Failure to dispose of refuse properly.

- **Count IV:** 36 CFR § 2.35(b)(2): Possession of a controlled substance (marijuana).

## I.      LEGAL STANDARD

The Fourth Amendment protects people and their property from "unreasonable searches and seizures." U.S. Const. amend. IV. A "search" within the meaning of the Fourth Amendment occurs when police officers either infringe an individual's reasonable expectation of privacy or physically occupy private property for purposes of obtaining information. *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016); *see United States v. Jones*, 565 U.S. 400, 404-05 (2012); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009) (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989)) (emphasis omitted); *see also Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (quoting *Jacobsen*, 466 U.S. at 113) (holding that a seizure of property "is some meaningful interference with an individual's possessory interest in that property").

Warrantless searches and seizures are presumed to be unreasonable unless they fall within "a few specifically established and well-delineated exceptions." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012). Under *Terry v. Ohio* and its progeny, a warrantless temporary seizure is reasonable under the Fourth Amendment if law enforcement officers have "reasonable

suspicion"—that is, "some objective manifestation" under the circumstances—that the person has committed, or is about to commit, a crime. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Additionally, under the "automobile exception," police officers may conduct a warrantless search of a vehicle "if there is probable cause to believe that the vehicle contains evidence of a crime." *Scott*, 705 F.3d at 417. The government bears the burden of proving that a warrantless search or seizure does not violate the Fourth Amendment. *Id.* at 416. If the government fails to meet this burden, evidence obtained as a result of the illegal search or seizure cannot "constitute proof against the victim." *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *see also Lundin*, 817 F.3d at 1157.

## II.     ANALYSIS

The two questions in this case are (1) whether Ranger Nash seized defendant by parking behind him on Southside Drive and, (2) if Ranger Nash seized defendant, whether there was reasonable suspicion to do so. The court will address each issue in turn.

A seizure occurs when a law enforcement officer, "by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citations, emphasis and internal quotations omitted). For an officer to make a seizure by a show of authority, there must be "actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Id.* "[W]hen an individual's submission to a show of governmental authority takes the form of passive acquiescence," courts must consider whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 255 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554). "When a person 'has no desire to leave' for reasons unrelated to the police presence, the 'coercive effect of the encounter' can be measured better by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id.* at 255 (quoting *Bostick*, 501 U.S. at 435-36).

It is well established, however, that the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he is willing to

answer questions. *See Muehler v. Mena*, 544 U.S. 93, 101 (2005); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983). No Fourth Amendment seizure occurs when a law enforcement officer merely identifies himself and poses questions to a person if the person is willing to listen. *See Royer*, 460 U.S. at 497; *see also Orhorhaghe v. INS*, 38 F.3d 488, 494 (9th Cir. 1994). This is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place. *See United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994).

An officer's act of parking a patrol car behind another parked vehicle and approaching the vehicle's occupants to request information does not constitute a detention. *See United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (finding no seizure when officer parked his car "a full car length" behind defendant's car without blocking it, did not activate siren or lights, and engaged in brief and consensual initial questioning); *United States v. Summers*, 268 F.3d 683, 686-87 (9th Cir. 2001) (finding no seizure when officer parked perpendicular to defendant's car, partially blocking it, and questioned defendant because "[n]othing prevented [the defendant] from leaving on foot"); *Kim*, 25 F.3d at 1430-41 (finding no seizure when DEA agent parked next to the defendant's car, partially blocking egress, approached car, identified himself, and requested permission to speak to defendant).

In this case, Ranger Nash did not seize defendant by parking behind him. Ranger Nash parked approximately one and a half car lengths behind defendant and did so without engaging his police sirens or lights. Defendant's van, while perhaps partially blocked from the rear, was able to terminate the inchoate encounter by entering Southside Drive and proceeding east. This encounter is thus analogous to that in *Washington*, 490 F.3d at 770 (finding no seizure when the defendant's egress was partially blocked from behind), and distinguishable from cases in which a defendant's egress was totally blocked, *see United States v. Harger*, No. 17-cr-000479, 2018 WL 3145757, at *4 (N.D. Cal. June 27, 2018) (finding seizure when officers "deliberately parked their SUV perpendicular to the back of Harger's van and blocked it from leaving"); *United States v. Nunn*, No. 14-cr-636, 2015 WL 3764181, at *4 (N.D. Cal. June 16, 2015) (finding seizure when car was "blocked between the curb in front of the vehicle and the patrol car behind it").

During the hearing, defense counsel argued that Ranger Nash's parking behind defendant must be understood in the context of their previous interactions. Specifically, Ranger Nash had warned defendant earlier in the evening about potential law violations and conspicuously followed and observed defendant over several hours. Defense counsel argues that Ranger Nash's parking behind defendant, in this context, amounts to seizure.

We disagree. The prior interactions undoubtedly colored defendant's perception of Ranger Nash's approach, but it is not fair to say that "a reasonable person would have believed that he was not free to leave." *Brendlin*, 551 U.S. at 254. Indeed, the prior interaction in which Ranger Nash and Ontiveros spoke was a consensual encounter, and a law enforcement officer following and observing an individual does not necessarily portend that seizure is imminent. Additionally, we note defendant's reaction to Ranger Nash parking behind him: Rather than wait for Ranger Nash to initiate an interaction, defendant voluntarily exited his van and affirmatively approached Ranger Nash. Considering the totality of the circumstances, we find that, at this stage of the interaction, Ranger Nash had not seized defendant.

Even if Ranger Nash had seized defendant, however, he would have had the reasonable suspicion necessary to justify doing so. "The concept of reasonable suspicion, like probable cause, is not readily, or even usefully reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). The standard is lower than probable cause, but nonetheless requires an objective justification. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). More than a hunch, "reasonable suspicion exists when an officer is aware of specific articulable facts that, when considered with objective and reasonable inferences, form a basis for a *particularized* suspicion." *Id.* Particularized suspicion has two elements: (1) "the assessment must be based on the totality of the circumstances[,]" and (2) "the assessment must arouse a reasonable suspicion that the particular person being stopped has committed or is about to commit a crime." *Id.* (emphasis omitted).

Here, Ranger Nash had reasonable suspicion that defendant was engaged in the crime of

"[c]amping outside of designated sites or areas."[1]  36 C.F.R. § 2.10(b)(1).  During their first interaction at about 6:00 p.m., Ranger Nash had observed defendant at Sentinel Beach Picnic Area shortly before it closed for the night and advised defendant that he could not camp there.  Later, at about 7:00 p.m., Ranger Nash observed defendant move from Sentinel Beach to the Swinging Bridge area.  About forty minutes later, at 7:40 p.m., Ranger Nash observed that defendant was still at Sentinel Beach, sitting in his parked car.  At that time of day, the Sentinel Beach area was dark, cold, and deserted.  The area plaintiff had parked was not designated for camping, and Ranger Nash testified that it is common for park visitors to attempt to camp in such locations.  Therefore, in view of the totality of the circumstances, Ranger Nash had reasonable suspicion that defendant was "[c]amping outside of designated sites or areas."  36 C.F.R. § 2.10(b)(1).

### III.    CONCLUSION AND ORDER

The court finds that Ranger Nash did not seize defendant by parking behind him at the Swinging Bridge area.  Even if Ranger had seized defendant, however, he would have had reasonable suspicion justifying the seizure.  Therefore, defendant's motion to suppress, ECF No. 9, is denied.

IT IS SO ORDERED.

Dated:    January 3, 2019    _____
UNITED STATES MAGISTRATE JUDGE

---

[1] Ranger Nash may also have had reasonable suspicion that defendant was operating a motor vehicle under the influence of alcohol or drugs when the alcohol concentration in defendant's breath was 0.08 grams or more of alcohol per 210 liters of breath.  *See* 36 CFR § 4.23(a)(2).

7